# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RITA C. HILL-WILSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Case No. CIV-18-30-SPS |

## OPINION AND ORDER

The claimant Rita C. Hill-Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty-three years old at the time of the most recent administrative hearing (Tr. 346). She completed two years of college, and has previously worked as a filler, bottling line attendant, personal care aide, and tax preparer (Tr. 162, 365-366). The claimant alleges that she was unable to work from June 9, 2010 through September 14, 2014, due to depression, anxiety, back pain, and ringing in her ears (Tr. 159, 344).

**Procedural History**

On July 11, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Richard A. Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 10, 2013 (Tr. 39-48). The Appeals Council denied review, but this Court reversed in Case No. CIV-14-368-FHS-KEW and remanded to the ALJ for further proceedings on March 30, 2016 (Tr. 404-419). On remand, ALJ B.D. Crutchfield conducted a second administrative hearing and again determined that the claimant was not disabled, for a closed period from June 9, 2010 through September 14, 2014. The Appeals Council again denied review, so ALJ Crutchfield's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform a range of light work

as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Additionally, she found that the claimant could perform simple tasks and relate to supervisors and co-workers on a superficial work basis, but that she could have no contact with the public (Tr. 318). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *e. g.*, mailroom clerk, laundry sorter, and assembler (Tr. 326-327).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly consider the opinion of her treating psychiatrist, and (ii) failing to identify jobs she could perform in light of the assigned RFC. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of anxiety, depression, obesity, and degenerative disc disease (Tr. 316). The medical evidence relevant to the claimant's mental impairment reflect that she received treatment at CREOKS Mental Health Center, with Dr. Vanessa Werlla. Treatment records reflect the claimant was assessed with neurotic depression in September 2010, and that she presented to the ER on July 18, 2012, with anxiety-induced symptoms (Tr. 231, 286).

In 2013, the claimant was assessed with major depressive disorder, recurrent, severe, and was noted to have severe problems related to primary support, school/work,

physical health, and access to health care services (Tr. 653). The claimant is a caretaker for her disabled son, and her son's disability payee (Tr. 680).

On April 20, 2009, Dr. Werlla signed a mental status form completed by Michael Maybello, LPC, which stated that the claimant was anxious and preferred to withdraw, and that performance expectations caused her additional anxiety and exacerbated her depressions symptoms (Tr. 229). It further stated that the claimant had not been able to overcome stress and anxiety to sufficiently attempt a return to work, opined that the claimant's prognosis for recovery was fair, and indicated that the claimant could remember, comprehend, and carry out simple instructions on an independent basis (Tr. 229). Further, the form stated that the claimant's anxiety increased with stress, including work pressures and supervision, and that she might become distracted by or distract co-workers due to agitation related to anxiety (Tr. 229).

On October 5, 2011, Dr. Minor Gordon, Ph.D., conducted a psychological evaluation of the claimant (Tr. 252). He noted that her affect included mild anxiety and mild depression, and that she was prone to worry, but found that her social-adaptive behavior was within normal limits (Tr. 254). He further found that her mild anxiety and mild depression should not preclude her from gainful employment, and that she retained the capacity to perform some type of routine and repetitive tasks on a regular basis, as well as the capacity to relate adequately with co-workers and supervisors on a superficial level for work purposes (Tr. 254).

On December 8, 2014, Dr. William Bryant, Ph.D., completed a mental status examination, although he also noted that she used to be a caretaker for his wife from 2006

through 2008 (Tr. 679). Upon examination, he stated that she looked ten years older than her age and appeared to have lost weight, and noted that her chronic major depressive disorder was aggravated by her husband (Tr. 682). He estimated her IQ to be average, and noted she had no memory problems but had evidence blocking due to depression, and concluded that she could manage her own benefits (Tr. 682). Finally, he noted she showed some judgment problems, but did not have antisocial attitudes and did not malinger (Tr. 682).

On October 11, 2011, a state reviewing physician found that the claimant could understand, remember, and carry out simple and some complex tasks under routine supervision, relate to co-workers and supervisors for work purposes, and tolerate some involvement with the general public (Tr. 272).

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") to determine if there were other jobs the claimant could perform with her limitations (Tr. 367-372). Following the administrative hearing, she then submitted an interrogatory to another VE regarding jobs the claimant could perform. In that interrogatory, she posited a hypothetical in which an individual with the age, education, and work history of the claimant, would have the RFC to perform light work, *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and tend pounds frequently and sit, stand, and/or walk six hours out of an eight-hour workday. Additionally, the hypothetical stated that the claimant could "perform simple tasks. She can relate to supervisors and co-workers on a superficial work basis. However, she can have no contact with the public." (Tr. 629). The VE indicated that the claimant could not perform any of her past work but

identified three light jobs such a person could perform: (i) mailroom clerk, DICOT § 209.687-026; (ii) laundry sorter, DICOT § 361.687-014; and (iii) assembler, DICOT § 706.684-022 (Tr. 630). The VE further indicated that the information provided was not in conflict with the DOT (Tr. 631). The VE indicated that there were no conflicts between the occupational information job descriptions contained in the Dictionary of Occupational Titles ("DOT") (Tr. 630).

In her written decision, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. As to the claimant's mental health, the ALJ noted Dr. Werlla's 2011 treatment notes, which indicated good response to medication, as well as the 2012 ER visit for anxiety-related symptoms. The ALJ afforded Dr. Gordon's assessment great weight, finding it to be consistent with the longitudinal records that reflected medication management and a mental status that was largely within normal limits (Tr. 323). As to Dr. Bryant's assessment, the ALJ afforded his opinion great weight based on the examination signs and findings (Tr. 323-324). As to Dr. Werlla's 2009 mental status form completed by counselor Maybello, the ALJ summarized it and accorded it some, but not great weight. She noted that the opinion was submitted a year prior to the alleged onset date, but assessed it as applicable anyway, noting that the relevant medical evidence demonstrated the claimant was maintained on an outpatient basis, that she had a good response to medication, and that she was to attempt twice-monthly group therapy (Tr. 325). Noting that the claimant's memory and social-adaptive behavior were within normal limits, the ALJ nevertheless limited the claimant to simple tasks during the relevant period based on this opinion. Finally, she noted that the claimant's ability to return to work was a

decision reserved to the Commissioner (Tr. 325). The ALJ then assigned some, but not great weight, to the opinions of the state reviewing physician, finding that the longitudinal evidence supported a finding that the claimant should be limited to simple tasks (Tr. 325). The ALJ then determined that the claimant's RFC included the limitations from the hypothetical posed in the interrogatory to the VE (Tr. 318). She then adopted the VE's testimony that the claimant could perform the light jobs of mailroom clerk, laundry sorter, and assembler (Tr. 327). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 327).

First, the claimant asserts that the ALJ erred in evaluating Dr. Werlla's treating physician opinion. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree

to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "[s]he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation omitted], so it is "clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed Dr. Werlla's opinion, as set forth above. The Court finds that the ALJ *did consider* her opinion in accordance with the appropriate standards and properly concluded it was only entitled to some, but not great weight. The ALJ thus did not err in failing to include any additional limitations imposed by Dr. Werlla in the claimant's RFC, where the ALJ thoroughly and completely summarized the evidence and explained the inconsistencies, notes, and the reasons for her findings. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Next, the claimant asserts that the ALJ erred in identifying jobs she could perform, because there was a conflict between the information provided and the Dictionary of Occupational Titles ("DOT"). Under Social Security Ruling 00-4p, "When vocational

evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the reasoning levels of each of the jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The first job, mailroom clerk, has a reasoning level of 3, *see* DICOT § 209.687-026. A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* DICOT § 209.687-026. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. As to this job, the Court agrees that there is a conflict here which the ALJ failed to identify. *Hackett v. Barnhart,* 395 F.3d

1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning.").

The remaining two jobs, laundry sorter and assembler, have reasoning levels of 2. *See* DICOT §§ 361.687.014, 706.684-022. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 361.687.014, 706.684-022. The claimant asserts that this reasoning level is likewise incompatible with simple work. The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion. *See Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

The Court thus finds that the identification of the mailroom clerk job is harmless error, because there are still jobs that have been identified that do not pose a conflict. *See*

*Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform).

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 6th day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**